IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SHIRA STALLWORTH**                                                                **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO. 1:10CV123-HSO-JMR**

**SINGING RIVER HEALTH SYSTEM**                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT upon the Motion [25] of Defendant Singing River Health System ("Singing River") for Summary Judgment, filed February 21, 2011, pursuant to FED. R. CIV. P. 56. Plaintiff has filed a Response [30], and Defendant a Reply [32]. After consideration of the Motion, the record in this case, and the relevant legal authorities, the Court is of the opinion that the Motion should be granted.

### I. BACKGROUND

Plaintiff filed her Complaint on January 19, 2010, in the Circuit Court of Hinds County, Mississippi, First Judicial District, asserting that, while employed by Defendant as a certified nursing assistant ("CNA"), she was discriminated against on the basis of her religion, subjected to a hostile work environment, and retaliated against. She brings claims pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983. Plaintiff also advances a claim under state law for intentional infliction of emotional distress. Defendant removed the case to the United States District Court for the Southern District of Mississippi, Jackson Division, on March 4, 2010, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331. Not. of

-1-

Removal [1]. The case was transferred to this Division on March 22, 2010. Ct. Order [4].

Plaintiff was employed as a certified nursing assistant ("CNA") with Defendant at all times relevant to this lawsuit. She alleges that she was criticized by fellow employees when she utilized her lunch breaks to pray. Compl. ¶ 8. Plaintiff purportedly informed her floor manager in May 2009, of this alleged harassment. *Id*. ¶ 11-12. Shortly after lodging her informal complaint, Plaintiff contends she requested, but was denied, additional training. *Id*. ¶ 13. On May 1, 2009, Plaintiff was told during an evaluation that she was being suspended with a recommendation for discharge on grounds of insubordination. *Id*. ¶¶ 16-17.

## II. DISCUSSION

A.  Summary Judgment Standard

FED. R. CIV. P. 56(c) states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to

"materiality," it is important to remember that only those disputes of fact which might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson*, 477 U.S. at 249. The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *Gaddis v. Smith & Nephew, Inc.,* 534 F. Supp. 2d 697, 699 (S.D. Miss. 2008).

B.  <u>Discrimination Claim</u>

Defendant moves for summary judgment on Plaintiff's religious discrimination and disparate treatment claims. Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  The Court construes Plaintiff's claim here as one of disparate treatment.[1]  Disparate treatment refers to deliberate discrimination in the compensation, terms, conditions, or privileges of employment on account of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  Such treatment may be proved through either direct or circumstantial evidence.  *Page v. U.S. Industries, Inc.*, 726 F.2d 1038, 1045 (5th Cir. 1984).

"Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Overnite Transp. Co.,* 212 F. App'x 268, at *2 (5th Cir. 2006) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  It "includes any statement or written document showing a discriminatory motive on its face." *Portis v. First National Bank of New Albany,* 34 F.3d 325, 329 (5th Cir.1994).  Where there is no direct evidence of discrimination, courts are to apply the tripartite burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *Portis,* 34 F.3d at 328 ("Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas* . . . . [, which]

---

[1] Plaintiff's Complaint does not suggest Defendant's use of a facially neutral employment practice having the result of producing a disproportionately adverse effect on a protected group necessary to support a disparate impact claim under Title VII.  *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).

establishes a prima facie case by inference . . . .").

The order of proof under the *McDonnell Douglas* framework is as follows: (1) the plaintiff must first demonstrate a *prima facie* case of discrimination; (2) then, if the plaintiff meets her burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions; (3) lastly, if the defendant meets its burden, the presumption of discrimination disappears, and the issue becomes discrimination *vel non*. *Crosby v. Premier Entertainment Biloxi, LLC*, No. 1:09cv14, 2011 WL 839540, at * 3 (S.D. Miss. March 7, 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)).

A prima facie case of religious discrimination may be established by showing that the plaintiff was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) that the adverse employment decision was differentially applied to plaintiff. *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000); *see also Kretchmer v. Eveden, Inc.*, 374 F. App'x 493, 495 (5th Cir. 2010). If the defendant meets its burden by providing a legitimate, nondiscriminatory reason for its actions, a plaintiff can establish disparate treatment by showing, by a preponderance of the evidence, "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S 248, 253 (1981)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *Burdine*, 450 U.S. at 253).

Plaintiff has not provided sufficient evidence to create a fact question as to whether she was replaced by someone outside the protected class, or that similarly-situated co-workers outside of the protected class were treated more favorably. Plaintiff does not dispute that she is unable to satisfy her *prima facie* burden.  Pl.'s Br. in Supp. of Resp. at p. 3.  She instead contends that because Defendant has asserted a nondiscriminatory reason for her termination, the Court, pursuant to *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008), should forgo its *prima facie* analysis and proceed to decide whether Plaintiff is able to show pretext.  The United States Court of Appeals for the Fifth Circuit, however, has declined to adopt this approach.  *See Atterberry v. City of Laurel*, 401 F. App'x 869, 871 n.1 (5th Cir. 2010); *see also Taylor v. Jotun Paints, Inc.*, No. 09-3801, 2010 WL 3720435, at *3 n.1 (E.D. La. 2010).  Because the record lacks sufficient evidence tending to establish the fourth prong of Plaintiff's *prima facie* case, summary judgment on this claim is appropriate.

Even assuming that Plaintiff was able to satisfy her *prima facie* case, she has not created a fact issue regarding pretext.  Defendant has produced competent summary judgment evidence that Plaintiff was terminated for insubordination when she tried to participate in a cross-training program despite being unauthorized to do so by the nurse manager, Debora J. Joiner.  *See* Joiner Aff., attached as Ex. "B" to Def.'s Mot.; Conference Record Form, attached as Ex. "M" to Def.'s Mot.  Plaintiff was also terminated for failing to follow the directions of the nurses as required.  *See id.*

Plaintiff argues that she "can show pretext as she has testified that she denies

the allegations of insubordination against her, and that the registered nurses consistently kept her from praying on her lunch breaks and always made an issue with her praying." Pl.'s Br. in Supp. of Resp. at p. 3. Generally denying the alleged wrongdoing upon which the termination was based is not sufficient to rebut a defendant's reasons for terminating a plaintiff. *See Warren v. Texas Disposal Systems, Inc.*, No. 10-50671, 2011 WL 666917, at *1 (5th Cir. 2011) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004)). Plaintiff does not dispute that Joiner did not authorize her to participate in the cross-training program, but instead contends that she misunderstood Joiner. Pl.'s Aff., attached as Ex. "B" to Pl.'s Resp. Plaintiff's "unsupported belief that [s]he had permission for [her] acts is not sufficient to create a fact issue precluding summary judgment." *Warren*, 2011 WL 666917, at *1. Further, there is no record evidence that Joiner's denial of authorization was motivated by religious discrimination. Nor is there any evidence that the nurses prevented Plaintiff from praying on her lunch breaks. Plaintiff has not established pretext.

C.   Failure to Accommodate Claim

To the extent Plaintiff alleges a claim based upon Defendant's failure to accommodate her religious beliefs, it cannot succeed. "Under Title VII . . . a covered employer has the 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" *Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). "Undue hardship" exists when an

employer is required to bear more than a *de minimis* cost. *Trans World Airlines*, 432 U.S. at 84; *Brener v. Diagnostic Center Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982).

To establish a *prima facie* case of religious discrimination under Title VII for failure to accommodate, a plaintiff must establish that "he had a bona fide religious belief that conflicted with an employment requirement, that he informed his employer of this belief and that he was discharged for failing to comply with the conflicting employment requirement." *Brener*, 671 F.2d at 144. Once a plaintiff satisfies a *prima facie* case, the burden shifts to the employer to show that it was unable to reasonably accommodate the plaintiff's needs without undue hardship. *Id*.

Plaintiff has not carried her *prima facie* burden on a failure to accommodate claim. She has not presented evidence on any of these elements. She generally avers that Joiner did not try to accommodate her religious beliefs. Pl.'s Aff., attached as Ex. "B" to Pl.'s Resp. Other than these general allegations, there is insufficient evidence that Plaintiff had a bona fide religious belief requiring her to pray at particular times, and that she was unable to do so because of an employment requirement. While there is evidence that Plaintiff informed Joiner that she utilized her break times to pray, *id.*, there is no evidence that she informed Joiner, or any other supervisor, that she needed to take particular break times to pray, or that she needed a special break schedule to accommodate her religious practices. Nor is there evidence that Plaintiff was discharged for taking her breaks when she needed to pray. The evidence instead reflects that she was discharged for insubordination and failure to carry out the requests of registered nurses to perform patient care. Conference Record Form,

attached as Ex. "M" to Def.'s Mot. This claim, to the extent it was alleged, cannot survive as a matter of law.

D.      Hostile Work Environment Claim

To establish a *prima facie* case of a hostile work environment, Plaintiff must show that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on religion; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ellis v. Principi,* 246 F. App'x 867, 2007 WL 2510620, *3 (5th Cir. 2007) (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996). "For harassment on the basis of [religion] to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996) (Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it

to be so.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999).  Thus, not only must Plaintiff have perceived the environment as hostile, the conduct must have been such that a reasonable person would have found it hostile or abusive.  *Harris,* 510 U.S. at 21-22.

To evaluate whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.  *Id.* at 23.  No single factor is determinative.  *Id.*

Plaintiff has generally alleged that she was criticized by staff members for taking her lunch breaks to pray.  Compl. ¶ 8; *see also* Pl. Aff., attached as Ex. "B" to Resp.  Such broad and conclusory allegations are insufficient to carry Plaintiff's burden.  *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2002).  To the extent Plaintiff alleges any wrongdoing by Joiner, the Court concludes that the record evidence does not support the conclusion that Joiner's actions were motivated by hostility towards Plaintiff's religion.  Pl.'s Resp. to Interrogs. at p. 17-18, attached as Ex. "R" to Def.'s Mot.;  Pl. Aff., attached as Ex. "B" to Resp.

Plaintiff otherwise bases her hostile work environment claim on an isolated comment made by Nurse Carol Mickel.  Pl.'s Resp. to Interrogs. at p. 17-18, attached as Ex. "R" to Def.'s Mot.  Specifically, Plaintiff claims that on one occasion Nurse Mickel told her that it was not a good time for Plaintiff to take her lunch

break and pray, and that Nurse Mickel "would like Sundays off, but can't have them. There are authorities over you and powers that be that you have to obey other than just the Holy Spirit." Pls.' Answ. to Interrogs. at p. 17-18, attached as Ex. "R" to Def.'s Mot.

The Fifth Circuit has found it "almost impossible that a single alleged incident of harassment could be considered 'pervasive.'" *Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 234 (5th Cir. 2004). "[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." *Turner v. Baylor Richardson Medical Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Nurse Mickel's statement is not sufficiently "severe" to support a hostile work environment claim. The competent summary judgment evidence does not demonstrate that this comment was motivated by religious animus, but rather reflects that Nurse Mickel was directing Plaintiff to complete her work tasks prior to praying. Plaintiff testified at her deposition that Nurse Mickel's entire statement concluded with "it's not good for you to go down to the chapel and pray right now, you need to wait, you need to do your things first." Pl.'s Dep. at p. 96, attached as Ex. "A" to Def.'s Mot. Moreover, though Plaintiff asserts that she was not properly trained, Pls.' Answ. to Interrogs. at p. 17-18, attached as Ex. "R" to Def.'s Mot., there is no allegation or evidence that Nurse Mickel's statement itself interfered with Plaintiff's work performance.

Moreover, in failing to respond to Defendant's Motion on this claim, Plaintiff

has not tendered any additional evidence in support of her position. Because Plaintiff has not introduced evidence sufficient for a reasonable jury to conclude that a hostile work environment existed, summary judgment is appropriate on this claim.

E.    Retaliation Claim

In order to establish a *prima facie* case of retaliation, Plaintiff must show: "(1) that [s]he participated in an activity protected by Title VII; (2) that h[er] employer took an adverse employment action against h[er]; and (3) that a causal connection exists between the protected activity and the adverse employment action." *Harris v. Mississippi Transp. Commission,* 329 F. App'x 500, 555-56 (5th Cir. 2009) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). In the retaliation context, an adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse employment action. *LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 388 (5th Cir. 2007). If a defendant articulates such a reason, the burden shifts to the plaintiff to demonstrate that the proffered reason is merely a pretext for an actual retaliatory purpose. *Id.* at 388-39. To carry her ultimate burden here, Plaintiff

must prove, by a preponderance of the evidence, that "the adverse employment action . . . *would not have occurred 'but for' [the] protected conduct.*" *Strong v. Univ. Healthcare System, LLC*, 482 F.3d 802, 806 (5th Cir. 2007) (emphasis in original) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)).

Plaintiff avers that she was subjected to retaliation in the form of denial of cross-training and termination, for complaining to Joiner on March 20, 2009, that the registered nurses were not allowing her to take breaks to pray. Pl.'s Br. in Supp. of Resp. at p. 3. Even if Plaintiff could establish a *prima facie* retaliation claim, she is unable to carry her summary judgment burden on pretext.

Defendant has offered legitimate, non-retaliatory reasons for its actions. Specifically, Joiner did not authorize Plaintiff to participate in the cross-training program because Plaintiff had not yet accomplished what was required of her in the CNA position. Joiner Aff., attached as Ex. "B" to Def.'s Mot. Plaintiff was later terminated based upon her insubordination with regard to the cross-training program, and for failing to follow the directives of certified nurses in patient care. *Id.*; Conference Record Form, attached as Ex. "M" to Def.'s Mot.

Plaintiff asserts that she "can also show pretext for the same reasons she can show pretext for her religious discrimination claim." Pl.'s Br. in Supp. of Resp. at p. 4. There, Plaintiff asserted that she "can show pretext as she has testified that she denies the allegations of insubordination against her, and that the registered nurses consistently kept her from praying on her lunch breaks and always made an issue with her praying." Pl.'s Br. in Supp. of Resp. at p. 3.

Generally denying the alleged wrongdoing upon which the termination was based is not sufficient to rebut a defendant's reasons for terminating a plaintiff. *See Warren v. Texas Disposal Systems, Inc.*, No. 10-50671, 2011 WL 666917, at *1 (5th Cir. 2011) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004)). As noted earlier, Plaintiff does not dispute that Joiner did not authorize her to participate in the cross-training program, but instead contends that she misunderstood Joiner. Pl.'s Aff., attached as Ex. "B" to Pl.'s Resp. Plaintiff's "unsupported belief that [s]he had permission for [her] acts is not sufficient to create a fact issue precluding summary judgment." *Warren*, 2011 WL 666917, at *1. Further, there is no record evidence that Joiner's denial of authorization was motivated by retaliation. Nor is there any evidence that the nurses prevented Plaintiff from praying on her lunch breaks. Plaintiff has not established pretext. Summary judgment on this claim is appropriate as well.

F.   <u>42 U.S.C. § 1983 Claim</u>

42 U.S.C. § 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. 42 U.S.C. § 1983. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Municipalities and other local government entities may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dept. of Social Services*, 426 U.S 658, 691 (1978).

Generally, municipal liability under § 1983 requires proof of: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). However, a single decision by an individual with "final policy-making authority" can in certain instances be grounds for liability under § 1983. *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). To prove liability under the single-incident exception, a plaintiff must show (1) that the defendant acted with deliberate indifference by disregarding a known or obvious consequence of its action, and (2) that there is a direct causal link between the defendant's action and the deprivation of federal rights. *Id.*

To prove municipal liability under either the general theory or the exception, the "policymaker must have final policymaking authority." *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Whether an official has final policymaking authority is a question of state law. *Id.* (citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989)). "Municipal liability cannot be sustained under a theory of respondeat superior." *Id.* (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (citing *Piotrowski*, 237 F.3d at 578).

Plaintiff avers that "Joiner clearly had policy making authority, and thus her

decision to terminate Plaintiff is sufficient to make Defendant liable under 42 U.S.C. § 1983." Pl.'s Br. in Supp. of Resp. at p. 4.  Plaintiff, however, has not submitted any competent evidence to support this assertion or this claim.  Summary judgment is therefore appropriate.

G.      Intentional Infliction of Emotional Distress Claim

Plaintiff also advances a state law claim for intentional infliction of emotional distress.  Compl. ¶ 27.  The Court has granted summary judgment on all of Plaintiff's federal claims.  While 28 U.S.C. § 1367(c) gives district courts discretion to decline jurisdiction over supplemental state law claims when all federal claims are dismissed, a court may retain jurisdiction over such state law claims to further the interests of judicial economy, fairness, convenience, and comity.  *Harrison v. Yalobusha County*, No. 3:09cv106, 2010 WL 3937964, at *11 (N.D. Miss. Oct. 5, 2010) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5 th Cir. 2002)).  Based upon the current procedural posture of this case, the Court will retain jurisdiction over Plaintiff's state law claim.

"Under Mississippi law, the standard for such a claim 'is very high: the defendant's conduct must be wanton and wilful and [such that] it would evoke outrage or revulsion.'" *Ellis v. Principi*, 246 F. App'x 867, 872 (5th Cir. 2007) (quoting *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002)).  "Employment disputes do not ordinarily sustain claims for [intentional infliction of emotional distress]." *Id.* (citing *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982-83 (N.D. Miss. 1996)).  The conduct which Plaintiff alleges does not meet the exacting standard necessary to support an intentional infliction of emotional distress claim, rendering it

subject to dismissal.  *See, e.g., Ellis*, 246 F. App'x at 872.

### III.  CONCLUSION

Based upon the foregoing, there is no genuine issue as to any material fact on Plaintiff's federal or state law claims.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [25] of Defendant Singing River Health System for Summary Judgment, filed February 21, 2011, pursuant to FED. R. CIV. P. 56, should be and hereby is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's claims against Defendant are hereby dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 24th day of June, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE